IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| B.W. and K.S., Individually, and as Next Friends and Natural Guardians of E.W., a minor child and protected person, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) ) | |
| DOUGLAS COUNTY SCHOOL DISTRICT #17, a/k/a MILLARD PUBLIC SCHOOLS DISTRICT/MILLARD SCHOOLS HIGH SCHOOL, HEIDI WEAVER, in her individual and official capacities, MATTHEW FEDDE, in his individual and official capacities, KIP COLONY, in his individual and official capacities, MICHELLE KLUG, in her individual and official capacities, and ANDREW PINKALL, in his individual and official capacities, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **COMPLAINT** |
| Defendants. | ) ) | |

**COMES NOW** Plaintiffs, B.W. and K.S., Individually and as Next Friends and Natural Guardians of E.W., a minor child and protected person (hereinafter collectively "Plaintiffs"), and for their causes of action against Defendants Douglas County School District #17, Heidi Weaver, Matthew Fedde, Kip Colony, Michelle Klug and Andrew Pinkall state and allege as follows:

1. E.W. is a minor child and resident of Douglas County, Nebraska.  She resides with her parents and natural guardians, mother K.S. and father B.W., in Douglas County, Nebraska.

2. Defendant, Douglas County School District #17 (hereinafter "MILLARD SCHOOLS"), is a Nebraska public school district and a political subdivision organized under the State of Nebraska and subject to the Political Subdivisions Tort Claims Act, Neb. Rev. Stat. §§13-901-13-928.

3. Defendant Matthew Fedde (hereinafter "FEDDE") was previously an Assistant Principal at Millard Schools High School and currently is in the custody of the Nebraska Department of Correctional Services in the Tecumseh State Correctional Institute in Nemaha Township, Johnson County, Nebraska.

4. Defendant Heidi Weaver (hereinafter "WEAVER") currently is and at all times relevant to this litigation was the Principal of Millard Schools High School and is a resident of Omaha, Sarpy County, Nebraska.

5. Defendant Kip Colony (hereinafter "COLONY") was at all times relevant to this litigation an Assistant Principal at Millard Schools High School and is a resident of Omaha, Douglas County, Nebraska.

6. Defendant Michelle Klug (hereinafter "KLUG") currently is and at all times relevant to this litigation was an Assistant Principal at Millard Schools High School and is a resident of Omaha, Douglas County, Nebraska.

7. Defendant Andrew Pinkall (hereinafter "PINKALL") currently is and at all times relevant to this litigation was an Assistant Principal at Millard Schools High school in Omaha, Douglas County, Nebraska.

8. Venue of this action lies in this Court pursuant to Nebraska Statutes §25-403.01 as Defendant Millard Schools High School is located in this judicial district and the events and omissions giving rise to this action occurred in this judicial district.

## FACTUAL ALLEGATIONS

9. From October to December 2017, Plaintiff E.W. attended high school at Millard Schools High School, located at 14905 Q Street in Omaha, Douglas County, Nebraska, 68137.

10. From October to December 2017, Plaintiff E.W. was 15 years old.

11. From August 2012 to January 2018, FEDDE was employed by MILLARD SCHOOLS as an Assistant Principal, which is a role in the Millard Schools High School administration.

12. In approximately October 2017, FEDDE commenced an inappropriate relationship with E.W., engaging in inappropriate conversations and behavior.

13. Between October 2017 and December 2017, FEDDE would call E.W. out of class to his office between one and three times per week.

14. Between October 2017 and December 2017, FEDDE also communicated with E.W. through Snapchat, Facetime, phone calls, and text messages, and saved inappropriate videos and photographs of E.W. to his cell phone.

15. In early November 2017, the inappropriate relationship between FEDDE and E.W. became physical.

16. In November 2017 and December 2017, FEDDE would meet E.W. in a stair well in the school where it was widely known amongst students and staff there were not any cameras for sexual contact on several occasions.

17. On or about November 3, 2017, FEDDE initiated sexual contact with E.W. in his office during the school day at MILLARD SCHOOLS.

18. On November 24, 2017, FEDDE initiated sexual contact with E.W. off school premises.

19. On or about December 3, 2017, FEDDE initiated sexual contact with E.W. at MILLARD SCHOOLS.

20. On or about December 12, 2017, FEDDE initiated sexual contact during a high school orchestra concert at MILLARD SCHOOLS.

21. On or about December 24, 2017, B.W. discovered journals maintained by E.W. detailing a sexual relationship with a school staff member at MILLARD SCHOOLS.

22. On or about December 27, 2017, Plaintiff B.W. contacted the Boys Town Crisis Hotline in order to report the sexual abuse detailed in the journal.

23. On or about December 27, 2017, Plaintiffs B.W. and K.S. confronted E.W. about the relationship detailed in the journal.  E.W. indicated that the individual she was involved with was FEDDE.

24. On December 27, 2017, WEAVER at MILLARD SCHOOLS received a report from Safe Schools documenting B.W.'s report of sexual abuse and his discovery of the journal.

25. WEAVER showed the report to FEDDE, who then began to act suspiciously.

26. On December 27, 2017, law enforcement commenced an investigation regarding the allegations of sexual abuse against FEDDE.

27. FEDDE was placed under arrest on December 28, 2017.

28. FEDDE was placed on administrative leave from MILLARD SCHOOLS on December 28, 2017.

29. FEDDE was placed on suspension without pay from MILLARD SCHOOLS on January 18, 2018.

30. FEDDE'S employment contract with Millard Schools High School was terminated at the Millard School Board meeting on January 22, 2018.

31. FEDDE entered a plea of no contest to two counts of attempted sexual assault of a child, Class II felonies, on September 17, 2018.

32. FEDDE was sentenced to 18-24 years in the custody of the Nebraska Department of Correctional Services on December 21, 2018.

33. Multiple administrators, teachers and employees at MILLARD SCHOOLS, including COLONY, KLUG AND PINKALL, observed E.W. going to FEDDE'S office multiple times per week during November and December 2017.

34. Multiple administrators, teachers and employees at MILLARD SCHOOLS, including COLONY, KLUG AND PINKALL, observed E.W. frequently speaking to FEDDE in the hallways at school on November and December 2017, almost on a daily basis.

35. Multiple administrators, teachers and employees at MILLARD SCHOOLS spoke to or overheard students describing an inappropriate relationship between E.W. and FEDDE before December 27, 2017.

36. At least one of MILLARD SCHOOLS' employees heard from a student that this student and E.W. would flirt with FEDDE, that the student felt guilty about the situation, and that FEDDE had encouraged flirtatious behavior from the student, E.W.

37. Multiple administrators, teachers and employees at MILLARD SCHOOLS, including COLONY and PINKALL, observed behavior from E.W. that they perceived as inappropriate or had personally engaged in conversations with E.W. that were inappropriate on previous occasions.

38. COLONY reported to law enforcement that he felt E.W. would "cross the line."

39. COLONY advised law enforcement he remembered a conversation where FEDDE advised him FEDDE met privately with E.W. to discuss saying things that "crossed the line."

40. Multiple administrators, teachers and employees at MILLARD SCHOOLS, including COLONY, KLUG, and PINKALL, admitted they had asked FEDDE about E.W.'s frequent presence in his office but failed to take any steps to stop the inappropriate interaction between an administrator and student.

41. Multiple administrators, teachers and employees at MILLARD SCHOOLS, including COLONY, KLUG, and PINKALL, admitted they told FEDDE he should be careful with his interactions with E.W. but failed to take any steps to insure FEDDE's inappropriate interactions stopped.

42. Multiple administrators at MILLARD SCHOOLS, including COLONY, KLUG, and PINKALL, reported discussions amongst MILLARD SCHOOLS administration regarding the propriety of the relationship between E.W. and FEDDE yet no person took any action to stop the relationship.

43. PINKALL indicated to law enforcement he believed E.W. had "an obvious crush" on FEDDE and that he advised COLONY that he felt FEDDE should "be careful."

44. PINKALL also advised law enforcement that he found it "weird" and "off putting" that E.W. was around FEDDE all the time yet did nothing to keep FEDDE from taking advantage of E.W.

45. KLUG indicated to law enforcement she advised FEDDE he "should be careful" with having E.W. in his office, and "girls like that can make accusations that can get people into trouble."

46. KLUG reported to law enforcement that FEDDE "blew her off" when she warned him to "be careful" of E.W.

47. KLUG also indicated she advised FEDDE on a separate occasion that she didn't know why E.W. was always hanging around FEDDE but he better "be careful."  KLUG took no action to stop FEDDE from taking advantage of E.W.

48. PINKALL indicated to law enforcement that MILLARD SCHOOLS administrators had been trained to spot vulnerable children, and that E.W. appeared attention seeking, craved attention from adults, and could be manipulated by "the wrong person".  Despite this training and identification of E.W. as a vulnerable child, PINKALL did nothing to stop FEDDE from emotionally and sexually abusing E.W.

49. COLONY admitted to law enforcement he had a conversation with PINKALL that he hoped FEDDE was "being smart and making good decisions," noting "it's not something worth losing your career and family over."

50. KLUG reported to law enforcement that she remembered observing E.W. in FEDDE'S office after school had ended at about 4:15pm on Friday, November 10, 2017, and was uncomfortable with E.W.'s presence in the administration's offices at that hour as the main office lights were off and no student should have been in the office at that time of day

51. KLUG reported seeing E.W. leave FEDDE's office with FEDDE, and indicated she was uncomfortable because it was "weird" and that her "mom instincts" had been triggered.

52. KLUG admitted initiating conversations with both PINKALL and COLONY regarding the incident.

53. Both PINKALL and COLONY recollected the incident described by KLUG.

54. KLUG, PINKALL and COLONY had multiple conversations about the incident described by KLUG.

55. PINKALL had independent recollection of the same incident as he had been in his office that evening, and upon seeing E.W. in FEDDE's office, he thought to himself "what is she doing in there?"  Regardless, KLUG, PINKALL, and COLONY did nothing to intervene and failed

to report the inappropriate behavior to any other administrator in an attempt to stop the inappropriate relationship.

56. COLONY described a separate incident where he observed E.W. in FEDDE's office with the door closed. COLONY reported opening the door and asking E.W. what she was doing there, and FEDDE reported E.W. was having problems with boys.

57. Multiple administrators, teachers and employees at MILLARD SCHOOLS reported to law enforcement that upon hearing FEDDE had been arrested for sexual abuse, they thought E.W. was likely involved.

58. COLONY, KLUG and PINKALL described to law enforcement that MILLARD SCHOOLS has "boundary" training they are required to attend that is mandatory for all employees.

59. No administrator, teacher or employee of MILLARD SCHOOLS, including WEAVER, COLONY, KLUG or PINKALL, ever contacted B.W. or K.S. to advise of any perceived inappropriate behavior by E.W. or any inappropriate relationship between E.W. or FEDDE.

60. Following the inappropriate relationship with FEDDE, E.W. endured bullying at the hands of her classmates at MILLARD SCHOOLS, both in school and online.

61. When E.W. and her parents approached MILLARD SCHOOLS about the ongoing bullying, administrators advised E.W. that the best course of action was to ignore the behavior in hope that it would subside.

62. MILLARD SCHOOLS has anti-bullying policies in effect as required under Nebraska Revised Statute §79-2,137.

63. During all times relevant to the above-captioned suit, E.W. was under the supervision of Millard Schools High School.


## COUNT I: §1983 CLAIMS AGAINST MILLARD SCHOOLS, WEAVER, FEDDE, COLONY, KLUG AND PINKALL

64. Plaintiffs hereby incorporate and re-allege paragraphs 1-63 above as though fully set forth herein.

65. The Due Process Clause of the Fourteenth Amendment protects the liberty interest of a child at  school to be free from sexual abuse.

66. E.W. was deprived of a liberty interest, i.e. her freedom of bodily integrity, as she endured the sexual abuse at the hands of FEDDE while attending MILLARD SCHOOLS.

67. At all material times, MILLARD SCHOOLS, WEAVER, FEDDE, COLONY, KLUG and PINKALL were state actors acting under the color of state law, as WEAVER, FEDDE, COLONY, KLUG, and PINKALL were employed as MILLARD SCHOOLS administrators.

68. The administration of MILLARD SCHOOLS, including WEAVER, FEDDE, COLONY, KLUG, and PINKALL, permitted an unconstitutional policy or custom of sexual abuse to persist at MILLARD SCHOOLS in one or more of the following ways:

   a. MILLARD SCHOOLS administrators, including WEAVER, COLONY, KLUG and PINKALL, demonstrated deliberate indifference to a pervasive pattern of unconstitutional interactions between another member of the MILLARD SCHOOLS administration, FEDDE, and E.W., a student who was perceived by MILLARD SCHOOLS administration as a vulnerable child.

   b. MILLARD SCHOOLS administrators, including WEAVER, COLONY, KLUG and PINKALL, demonstrated a deliberate indifference to inappropriate conduct and behaviors exhibited by FEDDE in his contact with E.W.

   c. The consistent, persistent and deliberate indifference of MILLARD SCHOOLS administrators, including WEAVER, COLONY, KLUG and PINKALL, of behaviors which constituted "crossing the line" and "boundary crossing," as defined by MILLARD SCHOOLS' internal training for school administrators, constitutes the tacit authorization of inappropriate conduct on a pervasive and institutional-wide level.

   d. The aforementioned deliberate and blatant indifference and tacit authorization of observed inappropriate behaviors and contacts between E.W. and FEDDE by MILLARD SCHOOLS administrators, including WEAVER, COLONY, KLUG and PINKALL, constitutes the implementation or execution of an unconstitutional policy custom by school officials or employees as defined under 42 U.S.C §1983.

   e. This conduct of MILLARD SCHOOLS administrators constitutes a blatant disregard for the constitutional rights of E.W. sufficient to "shock the conscience" as defined under 42 U.S.C §1983.

69. Additionally, as a member of the MILLARD SCHOOLS administration, FEDDE used his knowledge, power and influence as a member of the MILLARD SCHOOLS administration to commit a due process violation by subjecting E.W. to his sexual abuse.

70. FEDDE's knowledge of his own due process violations against E.W. constitutes a state-created danger as well as MILLARD SCHOOLS' institutional knowledge of due process violations.

71. These action by FEDDE constitutes a due process violation which "shocks the conscience" as defined under 42 U.S.C §1983.

72. As a result of the conduct of MILLARD SCHOOLS and the MILLARD SCHOOLS administrators, including WEAVER, FEDDE, COLONY, KLUG and PINKALL, E.W. suffered a deprivation of liberty, as well as permanent economic and non-economic damages resulting from the deprivation of liberty.

## COUNT II: TITLE IX SEXUAL HARRASSMENT AGAINST MILLARD SCHOOLS, WEAVER, FEDDE, COLONY, KLUG AND PINKALL

73. Plaintiffs hereby incorporate and re-allege paragraphs 1-72 above as though fully set forth herein.

74. E.W. was the subject of sexual harassment at MILLARD SCHOOLS in the following ways:

   a. E.W. was subject to the sexual abuse of FEDDE; and

   b. E.W. was subjected to consistent and pervasive bullying and sexual harassment at MILLARD SCHOOLS by other students, a pattern of conduct which was blatantly ignored by the administrators of MILLARD SCHOOLS, including WEAVER, COLONY, KLUG and PINKALL.

75. MILLARD SCHOOLS and members of the MILLARD SCHOOLS administration, including WEAVER, FEDDE, COLONY, KLUG and PINKALL, demonstrated deliberate indifference to known acts of discrimination in one or more of the following ways:

   a. FEDDE, as a member of the MILLARD SCHOOLS administration, engaged in sexual activity with E.W., a minor, on the premises of MILLARD SCHOOLS. The knowledge of FEDDE, a member of MILLARD SCHOOLS administration, of this discriminatory misconduct, constitutes the institutional knowledge of MILLARD SCHOOLS.

   b. MILLARD SCHOOLS administration, including WEAVER, COLONY, KLUG and PINKALL, engaged in the deliberate indifference to a pattern of inappropriate behaviors as documented above between FEDDE, a fellow member of the MILLARD SCHOOLS administration and E.W., a student that the MILLARD SCHOOLS administration perceived as a vulnerable child.

   c. MILLARD SCHOOLS administration, including WEAVER, COLONY, KLUG and PINKALL, demonstrated deliberate indifference to E.W.'s complaints of bullying and

cyberbullying by the students of MILLARD SCHOOLS, both on the MILLARD SCHOOLS premises and via the internet.

76. The MILLARD SCHOOLS' administration, including WEAVER, FEDDE, COLONY, KLUG and PINKALL, was vested with the authority to take remedial action to prevent the alleged discrimination, and the known acts of discrimination were under their control in the following ways:

   a. MILLARD SCHOOLS' administrators, including WEAVER, FEDDE, COLONY, KLUG and PINKALL, were in the position to provide an educational environment free of FEDDE's sexual abuse.

   b. MILLARD SCHOOLS' administrators, including WEAVER, COLONY, KLUG and PINKALL, were in the position to enforce their own policies and procedures regarding "boundary crossing" between other school administrators and students.

   c. MILLARD SCHOOLS' administrators, including WEAVER, COLONY, KLUG and PINKALL, were in the position to control other student's bullying of E.W., including but not limited the issuance of disciplinary warnings and infractions to students that were bullying E.W.

77. As a result of her sexual harassment, E.W. was excluded from participation in her educational environment, as she was not able to return to MILLARD SCHOOLS due to the environment created and encouraged by Defendants' conduct, as well as permanent economic and non-economic damages resulting from the Defendants' conduct.

## COUNT III: NEGLIGENCE AGAINST MILLARD SCHOOLS HIGH SCHOOL, WEAVER, COLONY, KLUG, AND PINKALL

78. Plaintiffs hereby incorporate and re-allege paragraphs 1-77 above as though fully set forth herein.

79. On June 28, 2018, Plaintiffs filed a Notice of Claim pursuant to Nebraska Revised Statute §13-901, et. seq.  On December 28, 2018, the six-month statutory notice provision ran without any communication from Defendants.  On January 23, 2019, Plaintiffs served a withdrawal of claims as permitted under Neb. Rev. Stat. §13-901(2).  This suit has been filed within the statutory time frame permitted under Nebraska Revised Statute §13-901, et. seq.

80. At all material times, MILLARD SCHOOLS owed a duty to E.W. to use reasonable care to ensure E.W.'s safety, care, health, and well-being, including protecting E.W. from sexual assault or abuse.

81. MILLARD SCHOOLS' duty of care included the supervision and protection of E.W. and the other students attending MILLARD SCHOOLS, and otherwise providing students with a safe environment while on the MILLARD SCHOOLS' premises.

82. MILLARD SCHOOLS owed E.W. a duty to prevent foreseeable harm from occurring to her while she was on its premises and/or under its supervision.

83. MILLARD SCHOOLS acted *in loco parentis* while entrusted with the custody and control of E.W.

84. MILLARD SCHOOLS had a special relationship with E.W. due to the educator/student relationship.

85. MILLARD SCHOOLS knew or in the exercise of reasonable care knew or should have known that E.W. was a vulnerable student who was susceptible to predatory adults.

86. MILLARD SCHOOLS knew or in the exercise of reasonable care should have known that FEDDE was engaged in an inappropriate relationship with E.W., resulting in sexual abuse.

87. MILLARD SCHOOLS knew or in the exercise of reasonable care should have known that failure to supervise the children in its care or its employees would lead to potentially dangerous and harmful conduct, including the sexual abuse of children in its care.

88. MILLARD SCHOOLS breached its duties of care in the following respects:

    a. By failing to provide a safe environment for students of MILLARD SCHOOLS;

    b. By failing to adequately supervise students while on the premises of MILLARD SCHOOLS;

    c. By failing to adequately supervise school staff, namely FEDDE, while he was on the premises of MILLARD SCHOOLS when MILLARD SCHOOLS knew or should have known he posed a substantial risk to children;

    d. By knowingly permitting prolonged one on one contact between E.W. and FEDDE;

    e. By failing to adequately train MILLARD SCHOOLS' staff and administration regarding the recognition of an inappropriate relationship or potential sexual abuse;

    f. By failing to adequately train MILLARD SCHOOLS' staff and administration regarding the reporting of an inappropriate relationship or potential sexual abuse;

    g.  By failures of MILLARD SCHOOLS' staff and administration to follow Millard Public Schools policy and procedure regarding "inappropriate boundaries" and warnings of sexual abuse;

    h.  By systemically failing to provide a safeguard to students to protect against confidential allegations of sexual abuse falling into the hands of the alleged assailant;

    i.  By failing to provide a safeguard to students by implementing an inadequate security surveillance system;

    j.  By negligently hiring FEDDE;

    k.  By failing to enforce anti-bullying policies and procedures implemented by MILLARD SCHOOLS as required under Neb. Rev. Stat. §79-2,137;

    l.  By failing to contact or inform E.W.'s parents of any perceived inappropriate behavior or inappropriate relationship with FEDDE.

89. As a direct and proximate cause of MILLARD SCHOOLS' negligence, Plaintiff E.W. has suffered severe psychological and emotional injuries and distress, pain and suffering, mental anguish, inconvenience, loss of capacity for the enjoyment of life, inability to lead a normal life, shame, embarrassment, humiliation, and costs associated with medical/psychological care and treatment.  The injuries and damages are permanent and continuing in nature, and Plaintiff will continue to suffer such losses in the future.

## COUNT IV: BATTERY AGAINST FEDDE

90. Plaintiffs hereby incorporate and re-allege paragraphs 1-89 above as though fully set forth herein.

91. FEDDE committed battery upon E.W. consisting of sexual contact upon her person as described above where E.W. was incapable of legally consenting to such contact.

92. As a direct and proximate cause of the sexual abuse described herein, Plaintiff E.W. has suffered severe psychological and emotional injuries and distress, pain and suffering, mental anguish, inconvenience, loss of capacity for the enjoyment of life, inability to lead a normal life, shame, embarrassment, humiliation, and costs associated with medical/psychological care and treatment.  The injuries and damages are permanent and continuing in nature, and Plaintiff will continue to suffer such losses in the future.

## COUNT V: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AGAINST
## MILLARD SCHOOLS, WEAVER, FEDDE, COLONY, KLUG AND PINKALL

93. Plaintiffs hereby incorporate and re-allege paragraphs 1-92 above as though fully set forth herein.

94. The conduct of Defendants as set forth above is herein incorporated.  The aforementioned conduct constitutes the negligent infliction of emotional distress on E.W.

95. As a proximate cause of Defendants' conduct, Plaintiff, E.W. has suffered severe psychological and emotional injuries and distress, shame, embarrassment, humiliation, and costs associated with medical/psychological care and treatment.  The injuries and damages are permanent and continuing in nature, and Plaintiff will continue to suffer such losses in the future.

## COUNT VI: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AGAINST
## MILLARD SCHOOLS, WEAVER, FEDDE, COLONY, KLUG AND PINKALL

96. Plaintiffs hereby incorporate and re-allege paragraphs 1-95 above as though fully set forth herein.

97. B.W. and K.S. are the natural and custodial parents of E.W. and were at all times in close proximity to their child and observed the injuries to their child on numerous occasions.

98. The conduct of Defendants as set forth above is herein incorporated.  The aforementioned conduct is the negligent infliction of emotional distress on said parental Plaintiffs.

99. As a proximate cause of Defendants' conduct, Plaintiffs B.W. and K.S. have suffered severe psychological and emotional injuries and distress, shame, embarrassment, humiliation, and costs associated with medical/psychological care and treatment.  The injuries and damages are permanent and continuing in nature, and Plaintiffs will continue to suffer such losses in the future.

**WHEREFORE,**  Plaintiffs B.W. and K.S., Individually and as Next Friends and Natural Guardians of E.W., a minor child and protected person respectfully request that this Court enter judgment against Defendants, DOUGLAS COUNTY SCHOOL DISTRICT #17, a/k/a MILLARD PUBLIC SCHOOLS DISTRICT/MILLARD SCHOOLS HIGH SCHOOL, HEIDI WEAVER, MATTHEW FEDDE, KIP COLONY, MICHELLE KLUG, and ANDREW PINKALL, and award all damages including compensatory damages and special damages, costs, interest, attorney fees pursuant

to 42 U.S.C. §1988, and punitive damages, as well as any other relief that this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial in this action.

B.W. and K.S., Individually and as Next Friends and Natural Guardians of E.W., a minor child and protected person, PLAINTIFFS,

By: _Karen Bailey_

ENGLES, KETCHAM, OLSON & KEITH, P.C.
1350 Woodmen Tower
Omaha, Nebraska 68102
(402) 348-0900
(402) 348-0904 (Facsimile)
Albert Engles, #11194
Karen Bailey, #22984
L. Paige Hall, #25855
Jacob Enenbach, #25127
bengles@ekoklaw.com
kbailey@ekoklaw.com
phall@ekoklaw.com
jenenbach@ekoklaw.com